Good morning, and thank you, Amy. We only have one case on the docket this morning, of course, and that's United States v. Deere, 22-1303. We'll hear from the appellant. Good morning. May it please the court. Jake Rochebeau for the appellant Robert Deere. To find by clear and convincing evidence that forcibly medicating a defendant is substantially likely to restore them to competence, a district court must consider and contend with substantial evidence that would undermine the case for forcible medication. Here, over the course of a 3-day hearing, the defense presented hours of testimony from 3 experts explaining why restoration was not substantially likely, particularly in light of Mr. Deere's delusional disorder, his extraordinarily long duration of untreated psychosis, or DUP, and his age. In its written cell order, the district court failed to discuss this evidence, instead only noting the mere fact that 2 of the 3 experts testified, and that they Counsel, is the test that you're asking us to apply, is that the test that applies in our circuit? It seems to me you're looking at tests that we see in the 4th and 9th circuit, I believe, which is That's right. I believe exactly how you've described what the court should have done here. Is that the test that's applied in our circuit? This court hasn't expressly held what level or specificity of findings is required in a cell order. However, this court has recognized that in light of the nature of the liberty interest at stake here, that heightened standards do apply. So, for example, this court held in Bradley that the burden of proof has to be clear and convincing evidence, and in Chavez, this court required that a high degree of specificity was required in the treatment plan. But neither of those opinions have said that the court had to go through what the defense has raised and discount that evidence. Is that correct? That's correct. Neither of those cases address this specific issue here. But just as a general matter, this court has acknowledged that that the standards this court sets must weigh the vital constitutional interest in the balance. This is what this court said in Bradley in deciding that the clear and convincing evidence standard applies. And in another context where you have something... Counsel, can I interrupt there? I just want to talk a bit more about Chavez, because you mentioned it did discuss, I think it used to phrase something akin to particularized findings being required, but that was as to the medication or the actual drugs, the list of drugs that would be used. And we don't, you know, there's just nothing here at issue as far as that particular conclusion. Are you suggesting we could extend that out somehow to require more particular findings about other facts? Yeah, so I'm not saying that Chavez or Bradley somehow control the standard here, that they're dispositive. I'm simply analogizing to those cases that this court has recognized that in light of the fundamental liberty interest at stake in SELL, it's important to have that heightened standards apply. And, you know, in Chavez, this court aligned itself with the Fourth and Ninth Circuits in finding the higher degree of specificity than the district court did there was required for the treatment plan, specifications in the treatment plan. And similarly, the Fourth and Ninth Circuits have said that, you know, particularized findings are required in finding, to support the district court's conclusion that a defendant is substantially likely to be restored. Well, there were, there was testimony here, for instance, about the Mr. Deere's age and the duration of his illness. And there was testimony about all that from the government's experts and the district court made it very clear that he not only found the government's experts credible, but that he definitely, you know, found the weight of the evidence favored their testimony. So why isn't that specific enough to encompass fairly particular findings about those issues, age, duration of the condition, and cognitive diminishment, that sort of thing? Well, so there's no doubt that tons of evidence was presented from both sides about age, duration of untreated psychosis. The problem is that the district court didn't, and that those are the basis, those are the factors that all the experts discussed in saying, in explaining their underlying conclusion or their ultimate conclusions as to whether there was a substantial likelihood of restoration or not. Right, but the court favored and made clear why, why it favored the two government experts. And it was because of their long term, you know, experience at this institution in Springfield because of their individualized experience with this defendant, their clinical experience with this individual. It weighed that so much more heavily. Why doesn't that encompass, is what I'm saying, that weight that the court put on their testimony? Why doesn't that encompass their testimony about all of these matters? Because that makes sense. Yeah, I think so. So the district court, the only justification it gave for finding that there was a substantial likelihood of restoration for siding with the government's experts was their experience and personal observations of Mr. Deere. But just because... Well, that's pretty large. That's not small. It's not like a small insignificant point. Well, it's certainly a relevant consideration, but in light of all of the evidence that was presented and these heavily disputed issues as to whether, to the extent to which Doreshavun treated psychosis, the extent to which his age, the extent to which delusional disorder is even treatable with medication. Those were heavily contested issues that the district court didn't discuss at all. All it said was, in light of the government experts' experience and personal observations, I'm giving full weight to literally everything they said. Well, as regards to the duration of his psychosis, isn't it agreed in this record that no one knows how long he's had this psychosis? There's no one knows exactly how long. Dr. Preston Beck, the government's expert, testified that it was somewhere between 15 and 30 years. The defendant's experts consistently referred to 30 plus years. But they didn't know. They didn't know because he's not been treated, you see, over time. So no one knows. When did this start? No one knows. They were just guessing. No one knows for sure, but the evidence and the only evidence that we have is based on the testimony of the experts. They were, that's what evidence is in the record. And they testified that it was at least 15 years. At least. That was the minimum that anyone testified to. And that's extremely important because the only evidence, the entire, in all of the government's evidence, all the studies they relied on their personal experience treating patients, there were only four, four patients or defendants who had had delusional, untreated delusional disorder for 13 years or more. And all four of those patients are referenced only in the herbal study. And of those four, only one was successfully restored. So granted, that's an extremely small sample, but it's the only evidence we have. There are four patients with untreated delusional disorder for 13 or more years. And only one of the four was restored. And it's the government's burden to prove by clear and convincing evidence, a substantial likelihood of restoration. And in light of his specific diagnosis of delusional disorder, that's gone untreated for more than 13 years. The only evidence in the record is it's more than 13 years. 25% is not a substantial likelihood. So, so you would require, you would require a study that would evidence support for the government's view. I don't know that a study would be required in every single case for every, you know, but where the only study is, where the only. Patients we have are for and only 1 of them was and isn't that a problem? I mean, we see that in the testimony in this case that there aren't a lot of studies dealing. Precisely with the issue that we have here. So the experts on both sides really had very little hard evidence, if you will, to look at. That's true. It's just an incredibly small sample size. Delusional disorder is a rare disease. The experts testified that it's extremely rare for someone to have this duration of untreated psychosis. And so the sample size is really small, but that's a problem for the government, not for the defendant. The government has. Has the burden to prove by clear and convincing evidence that it's substantially likely and substantially likely everyone tends to agree is 70% or more. I don't mean to interrupt you, but I think I'm, I think I hear you moving to your 2nd issue. And to me, these issues are rather distinct, whether or not the government is satisfied its burden. And the threshold that you started with, whether or not. Assuming that there's a requirement of particularized findings. Whether the courts findings were adequately particularized. And I want to follow up in that regard with judge Morris's question and that is. I think the parties would agree that the court. Went about trying to explain his findings based on. Which experts he found more credible. Do you agree with that? Yes, and the in your criticism in today and in your briefing. I understand to be well, that doesn't explain. How the court analyzed these 3 factual components. The defendant's age, the efficacy of psychotropic medication and restore competency for someone with sustained delusional disorder in the duration of his delusional disorder. And my question is. In light of what you're saying, the sparsity of empirical evidence. Isn't the, at the end of the day, the question whether or not we can meaningfully review. Why the district court arrived at the findings that he did. On step 2 of the selling query and in light of this. In light of what you're alluding to the sparsity of the empirical data. The fact that these Dr Preston did. On cross examination, take these questions about the efficacy of psychotropic medication. The fact that the defendant was in his 60s, the fact that he had. You had said 15 I had, you're probably right. I had remembered it between 10 and 30 years. But all of these 3 factual components did go into the. Evidence in which the district court then assess. The credibility of Dr Preston. Why isn't that. Enough at least to allow us meaningful review of why she arrived at her findings. I think part of the problem with the findings not being sufficient for meaningful review is. There's not enough findings for this court to find that that it's. The district courts find ultimate finding is correct. The, where the only justification the court gave. For for crediting the testimony of the government's experts. Is that they have a lot of experience and they personally personally. Observed Mr dear. That just doesn't that just doesn't equal. Correct opinion when when the district court should have. Should have actually looked at the underlying basis for the opinion and. And explored, I mean, at least mentioned. What the defense experts, the basis of the defense experts opinions were that. His duration of untreated psychosis and age and delusional disorder meant that it was substantially unlikely. And then explain why it was rejecting those. Like, for what the actual reason why those are. Less supported by in the scientific community or. Or for whatever reason, so certainly. The, the experience of the experts. Is a relevant consideration, but it's just not enough to show. This court or defendant or anyone that. Their conclusions were actually correct. Well, we're not supposed to decide or are we? I mean, this 1st, I've heard that we're supposed to decide. Which experts correct that's that's that's for the district court. I mean, we're just supposed to decide whether or not he gave a particularized explanation. Right. Right. But I, but I mean, the district court can give a reason. For a finding that doesn't mean that it's a sufficient explanation. I mean, we know we know that he gave a reason. Yeah, just in light of the evidence presented. That wasn't a sufficient explanation. Let me ask 1 and we'll give you a little bit more time. But I do want to just follow up with this question. If he gave a reason, for example, if the district court said. Um, well, I have looked at the evidence about the defendant's age that he was 64. I find that, you know, some of the data talks about whether or not he was 65 to 85. Which I think was some of the subject matter that Dr Preston confronted. And that the court says that the fact that he's 64 really would not. In my district court's opinion would not diminish the efficacy of psychotropic medication for Mr deer. And I also find the district court that. That psychotropic medication generally can be effective to restore competency for. Individuals with sustained delusional disorder. But it doesn't say 1 word about the duration is. Now, is, is, is the explanation adequately particularized. Because the district court dealt with 2 of the 3 factual components about the 3rd. What is the limiting principle on the on the on the depth of particular. Particularity that you're asking us to. Adjudicate, right? I mean, I think it would just have to vary on a case by case basis. I don't think there's a bright line rule of the number of. Things they have to discuss, but, you know, and that's just the nature of. Trying to find what are trying to determine whether a district court's findings were adequate. I think you just have to look at. The, you know, the main bases for the opinions competing opinions on either side. And certainly address them to some extent and here the district court. Discussed literally nothing of what the defense expert says. So, under under really any standard that can't be enough. Well, just I know. Or over time, and now we're still going. What is our scope of review here? So, is it DeNovo? It's DeNovo for the sufficiency of the findings. Okay, and if we go into that pond, don't we can't we look at all the evidence. I mean, this this is a real tight case. It's not like a lot of the cases we see where we have volumes of record. We have basically two sides. One side has these doctors. The other side has their doctors. So, we look at the doctors both sides. That's DeNovo review, isn't it? And if we have and if we have that, if we have the district court saying, I believe this group of doctors over other the other side's doctors. Don't we therefore have a basis for the court's ruling? Because we know what those rulings are, what those opinions are. That's a DeNovo review, isn't it? I believe so. Yeah, I mean, you're reviewing DeNovo. Whether the explanation was sufficient in light of the evidence presented. And here, I'd submit that in light of the evidence presented, the district court's not address any of the defense experts testimony at all. I see that. Did you have any other questions? No, thank you. Judge Morris, did you? No, I'm good. Thank you. Okay, thank you. We did we did go a little over time. Amy, let's give Miss Miller three additional minutes and we'll give the appellant a minute and a half for your rebuttal. Miss Miller. Good morning, and may it please the court, Marissa Miller for the United States. Both sides agree that there are two distinct issues in this case. One of them is whether the district court clearly aired when it made this factual finding. And the other is whether the district court's order is sufficient to enable meaningful appellate review. Unlike the defense, we believe the answer to that second question is fairly straightforward. Miss Miller, one of the things that you did argue in your response brief was that just as you're about to develop that the findings were adequately particularized, but you didn't address, I don't think, the threshold argument that the appellant has that particularized findings are required. Do you concede that particularity in the findings is necessary for a cell order as step two? I believe I would, Your Honor, but I would just argue that the district court's order met that threshold for particularity. The only case we really have on point in the 10th Circuit is United States versus Englehart. But this case is a bar cry from Englehart, which was a case where the district court gave a somewhat meandering ruling from the bench in which it provided no explanation for why it was restricting Mr. Englehart's First Amendment rights. Whereas here, we have a 20-page order. We have 50 factual findings. There can always be more analysis, but the district court gave us or gave this court what it needs to understand the basis of the court's decision, especially with respect to this factual finding issue where the district court said it was relying on the opinions experts had a stronger clinical and factual foundation for them. Well, even for a pretrial detainee, or let's say a supervised release condition, we do require particularity in the findings to justify even a condition on release that an individual has to take psychotropic medication. So it seems a little counterintuitive to say that a pretrial detainee is entitled to particularized findings and is not entitled to particularized findings. For example, in this case, where the defendant is a pretrial, he's not been adjudicated guilty, and for a supervised release after an adjudication of guilt after a prison time, that that individual is entitled to particularized findings to justify a supervised release condition. So it seems a little counterintuitive not to require particularity for a pretrial detainee like Mr. Deere. Again, Your Honor, we're not arguing that no particularized findings are required in this context. We absolutely agree that the district court has to make those particularized findings. The dispute, excuse me, the dispute between us and the defense is essentially that the threshold for those findings is not so high that this order, which contains 50 specific factual findings, doesn't surmount that bar. Okay. I'm sorry. I think I misunderstood. Go ahead. I think ultimately, Mr. Deere's argument on this point rests on a single quote from an out-of-circuit case, United States v. Watson, in which the Fourth Circuit said that district courts have to contend with substantial evidence that undermines the case for medication. But I think we have to be very careful with this language and make sure that we're reading it in context. It's one thing to quote this language, which is dicta, but it's another thing to create an entirely new legal rule based on it. In addition to not being binding on this court, Watson simply doesn't stand for the proposition that the defense claims it does. Watson isn't a case about how detailed the district court's order was. It's a case about the district court getting the legal standard wrong because the district court entirely failed to consider the specific defendant's individual chances of being restored by the medication at issue. So this language doesn't support the idea that a district court has to explicitly address and perhaps reject every piece of evidence that's raised by the defense. The best and, I think, fairest interpretation of what the Fourth Circuit is saying with this language is when we have a case where the district court has missed a huge chunk of the required legal analysis and the defense presented evidence on that issue, then it's especially problematic because that really confirms that the district court is ignoring this important consideration in the analysis. How did the district court process and analyze and decide the impact of Mr. Deere's age on his susceptibility to being restored to competency? Certainly, Your Honor. I believe that question is essentially answered by the district court's credibility finding in which it explains that it gave more opinion to the weight of the government's experts versus the defense's. Judge Moritz used the word encompass. I tend to think of it very similarly. The district court is essentially incorporating all of that testimony into its order. Of course, it would make everyone's life easier in appellate world if the district court provided a very clear explanation. If the district court said, the government's experts think that age doesn't matter until someone reaches 85. The defense's experts think it does matter. I'm signing with the government's experts because they have more experience in this field. But we already know all of that information from the district court's order. So where do I look in Dr. Preston's testimony where he said this defendant's age, 64, will not inhibit his ability to be restored to competency through psychotropic medication? Well, I think Dr. Sarazin testified to that point. I can look up the record citation for you if it would be helpful. I believe Dr. Preston Bach, and this was one of the ways I think in which the government's quite credible, acknowledged that the impact of age is really unclear. We only have two studies that speak directly to delusional disorder, and only one of them really looks at age. And oddly, the older patients did better. I guess I say oddly, but the reality is one of the things with age is there's so many confounding factors. We're looking at, in particular, cognitive, neurocognitive deficits. And when someone is advanced in age, there is an increased likelihood of that being present. So I think Dr. Preston Bach acknowledged that there is probably a correlation between, there may be a correlation between advanced age and restoration chances. But Dr. Preston Bach relied on her experience treating people like this to conclude that Mr. Deere's age in this case was not going to affect him, and that perhaps the better predictor of whether Mr. Deere would be successfully restored was his intellectual, whether he had an intellectual disability or something like dementia, which Dr. Preston Bach very clearly concluded that he did not. I think it's an argument, kind of a harmless error argument in some ways. I mean, we don't have the district court pointing to any of that evidence, but the evidence is in the record. And when we're conducting our de novo review, we can look at that record. So, I mean, it seems that you're suggesting if particularized findings were required, for instance, regarding age. Well, I guess the evidence was there. But my first response is that the district court did make a particularized finding with respect to age. It just, it didn't show the work behind it. But I'm not sure that's necessarily required. Well, he does make a precise finding as regards age. Finding of fact number two. Exactly. Acknowledges the age and says age is not an impediment to restoration of competency through the administration of anti-psychotropic medications. Yes, and I think in a lot of ways, looking at paragraphs two and twelve and fourteen, the district court, it shows that the district court was considering all of this evidence the defense presented, even if it didn't specifically identify it as the defense's evidence, right? The defense's main arguments here were age, which the district court addresses in paragraph two, and intellectual disability, which I believe is in paragraph twelve. The district court talks about duration of untreated psychosis and it talks about the efficacy of this medication. So, I don't think we have a concern where the district court is absolutely ignoring everything he heard. He's just not identifying it as the defense's arguments. But sorry, Judge Moritz, just to respond to your question, yes, I think there is a bit of a harmless error aspect here. I think, you know, we're talking about de novo review, but we're also talking about clearly erroneous findings of fact. And one of the things we see in a lot of the Tenth Circuit case law is, and we see this in the Seton case, which, you know, obviously is unpublished. But as this court said in United States v. Wacker, yeah, sometimes it would be really helpful if the district court would be more precise in articulating the reasons for how it's coming to the decision that it did. But when there's evidence in the record that answers those questions, that doesn't rise to the level of something like Englehart, where there's truly nothing in there that and I guess the evidence that it heard. I'd like to discuss the district court's paragraph about the scientific literature, because I don't believe that that requires remand either. It's not unusual for the district court to say or write something that's subject to multiple interpretations. But when these statements are challenged on appeal, we don't go out of our way to adopt the most problematic construction of those statements that suggests that the district court might have misunderstood the facts or the law. So are you saying we look at everything here in the light most favorable to the government? Yes, Your Honor. Well, I believe we look at everything here in the light most favorable to the district court. I think the district court receives a presumption that it is following the law and understands what's going on in the case. And here, you know, I don't I don't actually think there's a lot of ambiguity in this paragraph. There's really only two possible interpretations, and neither of them, neither of them, honestly, this paragraph is not really necessary to support the district court's finding, because the district court didn't base this finding on its own independent evaluation of the academic literature. It based this finding on the opinions of the government's experts as well as their experience and their opportunities to speak with Mr. Deere. And you're talking about. Go ahead, Judge Moritz. Well, I was just going to say, I'm not sure how we can make that determination from paragraph 21. It's quite inconsistent because it seems to be talking about it seems to be crediting the study cited by the government's experts. But then the studies that then says are less persuasive and small were the studies cited by the government experts, even though it doesn't seem to understand that. And from what you just said, which is, well, it didn't really rely on those studies. That may be true. How do we know that? I mean, it just it just leads in with some published studies show it doesn't say, well, I'm not going to make a determination one way or the other because I'm really relying on the personal experience of these two experts and not on these studies. We just don't necessarily know that, do we? We don't know it for certain, but I think I would go back to the point that this court sees cases all the time where a district court says something that might be a little confusing and we're not going to assume and perhaps demand reversal or remand choosing the assumption that makes the district court seem like it has no idea what's going on as long as there's an interpretation out there that's somewhat sensible, which I do believe we have here because I think the I don't have as much trouble with this paragraph as perhaps the defense does, because the defense's argument is that, well, all the studies had small sample sizes, so that doesn't help us distinguish between the ones the court found more or less persuasive. But I think that's a direct reference to the fact that one of these preceding studies, which obviously didn't even make it into the record, had a sample size of seven people versus the ones having 22 people and 15 people. So how do you read this paragraph? Did the district court rely on it? Did the district court rely on studies? Or is the district court saying, well, there's some studies over here, and then there's some studies over there, and then we have the next paragraph, paragraph 22? I don't know if the district court relied on these studies by reading this. I guess I interpret it as the district court relying on those studies, but I don't think if the other interpretation is the district court saying, the studies are really confusing, there's evidence on both sides, then that's not really problematic either, because even if that's not the basis for the district court's decision, there's more than enough in its reliance on the government's experts to support this particular factual finding. Before I run out of time, I wanted to address very quickly the defense's discussion of the evidence on duration of untreated psychosis, because I do think the defense has perhaps overstated the weight of that evidence. There were two concrete pieces of evidence presented to the district court on DUP. One of them was the Herbell and Cochran study in which, yes, there were four patients who had a DUP greater than 13 years, and only one of them was restored, but the implication from this can't be that people in this range, in this cohort, have a 25% chance of restoration, and that's because, as both the authors of the study said and the government's experts testified, two of those people didn't take the medicine for a long enough period of time, so they're not valid data points, and even once you remove them, the fact that there's a 50% success rate doesn't tell us anything. If we think back to our college statistics course, with a sample size of two, if your theory is that there's a 70% restoration rate, it's entirely consistent with that hypothesis to test two people and have one be restored and one not. And then the other evidence that was put in the record on duration of untreated psychosis was Dr. Preston Boggs' own personal experience in which she said that she had treated patients with DUPs in the range of 10 years, 20 years, and 40 years, and all of them had been successfully restored. How do we know that that was what the district court was relying on? I think the district court's reliance here, I think paragraph, I think the paragraph in which the district court made a credibility determination that the government's experts were more credible versus the defendants explains exactly how it made this decision. It's a battle of the experts, right? The district court judge is sitting there, and he's listening to conclusions and scientific analyses presented by several different people, and he's determining which he finds more persuasive. And not only is the district court not necessarily required to explain those credibility determinations, here, I think it's entirely reasonable for the court to place more evidence on the government's experts' testimony for the reasons we gave in the brief. And we have to recognize that to the extent that the defense has concerns with those credibility determinations, we give them significant deference once we're on appeal. The defense argues that these aren't credibility. Well, let me ask it a different way. Is what you just explained, is that part of the content of the government's expert witnesses' testimony, or is that your explanation for why the district court's findings was consistent with substantial evidence? The discussion of... What you just explained about the effect of the duration of the delusional disorder. Yeah. Dr. Preston Bach testified specifically that those two patients did not receive medication for an adequate period of time. The authors of the cell study, sorry, the HERBEL study, also point that out. I perhaps put my own gloss on it by reminding us of how statistics work, but I hope that's not going too far beyond the record. I see that... I do have one more question. You keep talking about credibility, and in paragraph 22, we do have that statement about they both testified credibly, but it isn't really at all about credibility, is it? I mean, I know you discuss it in the brief, but it seems that it's a lot more about weight than it is credibility. And I don't think there was any finding that the various experts that Mr. Deere presented were not credible, was there? So don't we have to assume this is weight, not credibility? I would disagree, Your Honor, and let me explain why. Certainly, there are differences between credibility determinations involving a lay witness who's describing a series of events and battling experts. But what's important here is what is required for the district court, and I guess how the defense wants these things treated differently, and I would say that the case law tells us they're not. The defense hasn't cited, and we haven't found any case that says a credibility determination involving expert witnesses is a different thing. But I can cite the court several cases, which I'd be happy to do in a 28-G letter, in which there is a battle of the experts, and the fact finder is a judge, and when it goes up on appeal, the court of appeal says the district court clearly made this decision because it and we give great deference to that determination. So yeah, maybe credibility isn't the right word for it, but the resolution of conflicting evidence and how much weight it gets is something the law is clear that is firmly within the fact finder's discretion. I'm glad Judge Moritz brought it up, because every time I read credibility in your brief, I wanted to scream, because it's not a credibility determination. You're not saying that any of these experts lied, are you? I think what I'm- You're saying that the district court looked at their backgrounds, the information that they provided the court, and determined which of the two groups of experts it would rely on in its ruling. And it's a weight thing. It's not credibility. Nobody's saying anybody lied. Of course, Your Honor, and perhaps that's the wrong use of the term credibility, although the district court talks about crediting, right? Whose version of events are we crediting? But the reason for that was because of the weight it gave to the personal experience of these experts. That's why it credited over the others, the testimony, which is weight. But either way, I understand your point, I guess. We don't look at it. We would respectfully ask the court to affirm. Judge Briscoe, do you have any questions? No. Judge Moritz? Nope. Okay, Amy, I think I gave the appeal one and a half minutes. Verbal, you may proceed. You're on mute. Thank you, Your Honor. First, I just want to say, push back on the idea that Watson is not about inadequate findings. It certainly is. The Fourth Circuit found multiple errors, one of which was the government's failure to present specific evidence, and then an independent error was the district court's failure to adequately analyze the available evidence and discuss the evidence that undermined the case for forcible medication. Starting at 427 in that case. There is a big difference between no evidence, which was what the situation in Watson, no evidence, versus there's evidence, we just don't exactly know which one the district court was looking to. Right, and the Fourth Circuit said that those were independent errors. So the government failed to present evidence, and independently, the district court failed to analyze the defendant's evidence. So here, I'm not saying there was literally no evidence. It failed to say that there wasn't any, basically. That's all right, go ahead. And then real quickly, just on harmless error. There is not a true harmless error analysis for when a district court fails to make particularized findings. The only way you would be able to not remand when there's failure to make sufficient findings is if the record allows for only one conclusion. That's where this court could conclude, as a matter of law, that the district court would clearly err in finding otherwise. So I'd ask this court to reverse and remand. Thank you. Judge Morris, do you have any other questions? No, thank you. Okay, Judge Briscoe, to you. No, thank you. Okay, thank you, counsel. It was well presented. Did you brace it in your arguments today? This matter will be submitted. Thank you.